Common Pleas Court of Cuyahoga County.

STATE OF OHIO, EX REL., HENRY G. SCHAEFER, A TAXPAYER, v. JOHN A. ZANGERLE ET AL.

Decided August 27, 1932.

*Paul Howland,* for Henry G. Schaefer.
*Paul Westernhaver,* for county commissioners.
*Henry S. Brainard,* for the city of Cleveland.

SILBERT, J.

In November, 1927, the voters of Cuyahoga county were asked the question as to whether they would approve an expenditure of $8,000,000 for a bridge, with necessary approaches thereto across the valley of the Cuyahoga River, from a point at or near Central Avenue to a point at or near Lorain Avenue. The voters approved by a vote of 122,638 for and 73,381 against the project.

Various civic agencies had interested themselves in the undertaking. Amongst these was the Chamber of Commerce, the Chamber of Industry, and a special committee of fifteen, composed of civic leaders and engineers headed by Mr. Paul Howland. As the work upon the bridge progressed, these various agencies maintained their interest. The advice of the City Planning Commission was also taken by the County Commissioner who had the project

in hand on every step of the work until the bridge was finally completed.

The bridge is thoroughly modern in every respect. It is built by the best available engineering methods. It is 5265 feet in length and has an average width of 83 feet. It will undoubtedly prove of the utmost usefulness to the public in the future. The bridge is completed except for the approaches. It is now necessary to complete the east and the west approaches to said bridge. It is not a question of the lack of finance which deters the builders, as the total unused balance of the bond issue is amply sufficient to complete the necessary work. Nor is it a question of the desirability to complete the same, but it is entirely a question of power.

Have the county commissioners the power to proceed under the mandate given them by the people? They were told they could erect a bridge and the necessary approaches thereto, but the question nevertheless remains as to what constitutes a necessary approach to a bridge.

It seems like a simple question and there should be ample authority but unfortunately the question has never before been judicially determined in Ohio. The court, therefore, is required to determine what constitutes a necessary approach. In order to do so it was necessary to get the entire background of the situation. We had to go thoroughly into all the facts and circumstances and it was likewise necessary to view the premises.

Speaking of the West approach, which is the only one we are now considering, the plan is to remove various obstructions; to widen West 24th Street to Franklin; Gehring to Chatham, and to remove the "bottle neck," an obstruction on Lorain Avenue. This widening process is to be done partly by the county and partly by the city of Cleveland. The estimated total cost of said approach is fixed at $250,000.

The court after due consideration is convinced that all possible care was taken by those having the project in hand to keep costs down; that only necessary expenditures are being incurred in claims for compensation, damages and improvement estimated at $250,000.

We are at present going through some pretty strenuous times. Much is being heard everywhere about the de-

pression. This depression talk, however, carries with it a great deal of hysteria. We are becoming unduly alarmed. We are becoming fearful even about necessary and legitimate expenditures. It would seem to the court that we should pursue the even tenor of our ways as far as possible. The best way of curing a depression, if one exists, is to ignore it and carry on our normal functions. It is just as essential that employment be given those seeking employment, as it is essential that money be saved. This is said because the court is required to define what constitutes a necessary approach. The court wishes it known that it is not accepting the depression attitude in making its definition, but is considering it as it would in normal times.

Were we to build merely for the present it would be different. It would be absurd however to build merely for the present. We must contemplate the future as well as the present. It is not economy to be niggardly about our primary highways. The East and West sides of our city have too long been divided; they have been in fact like two separate cities. They must be solidified and united. Bridges and streets will help to do it. Not only must we have bridges and streets but we must likewise have necessary traffic arteries to take care of the development certain to take place in the future.

The necessary approach to the bridge might be any entrance thereto. It could be any passageway, it might even be an alleyway. We must use common sense, however, in reaching a decision, and we should say that the approaches comprise the necessary traffic arteries so that we may be enabled to develop the maximum traffic capacity. The people of the county voted for necessary approaches. What did they intend? Let us try to define their intention by starting with a bridge.

A bridge is a complete passageway and includes what is accessible within reasonable limits. The term includes not only the structure spanning the chasm over which it is located, but also the approaches by means of which access thereto is obtained. An approach therefore is as much a part of the bridge as the wings of a bird are a part of the bird.

Under the common law a distance of 300 feet is considered the necessary approach of a bridge. In these modern times we can set no such arbitrary standards. A necessary approach may be 30 feet or 300 feet, all depending upon the facts and circumstances. The Philadelphia-Camden bridge for example has an approach of approximately one-half mile. What constitutes a necessary approach is therefore a question of fact to be determined in this instance by the county commissioners who are in duty bound to erect "good and sufficient" approaches. In determining that question the duty rests upon them to consider the nature and character of the bridge, and the objects sought to be accomplished.

In this instance they are required to consider the needs of Greater Cleveland; the future must be borne in mind; they must not do anything that would in any way diminish the usefulness of the bridge, or impede the general public progress. Certainly there should be no "bottle neck" and the traffic to and from the bridge must flow freely and naturally. There must be passageways making the bridge reasonably accessible; there must be the necessary traffic arteries. The maximum utility and usefulness should be their objective. Not only is it required that those adjustments be made which are necessary, but it is also essential to consider those adjustments which are desirable in order to make them "good and sufficient."

These adjustments are to be made by the county commissioners in whom is vested the power to carry out the mandate of the public. The actions of these commissioners may be reviewed by the court, however, in the event there has been an abuse of discretion.

A necessary approach to a bridge, therefore, is such an adjustment of the alignments and grades of the streets immediately contiguous thereto, as will afford the maximum of access and render available to the public the entire capacity of the bridge power.

The court, therefore, specifically finds that the expenditure of public funds in the purchase of bonds on the western approach is necessary in order to provide sufficient approaches. The injunction to enjoin the Bond Anticipation Bonds will accordingly be denied. Plaintiff duly excepts.